■ JERALDINE L. WILLIAMS, Appellant, v RAYMOND L. LYNCH, Respondent. [666 NYS2d 749] —Yesawich Jr., J. Appeals (1) from an order of the Supreme Court (Ellison, J.), entered June 28, 1996 in Chemung County, which granted defendant's motion for summary judgment dismissing the complaint, and (2) from the judgment entered thereon.

At issue is an alleged oral contract, by the terms of which the parties were to cohabit and share household expenses. According to plaintiff, she agreed to sell her own house and most of its furnishings, move into defendant's home and pay one half of the expenses associated with the upkeep of that property, in exchange for, and in reliance upon, defendant's promise that she would, *inter alia*, have the use of that home for the rest of her life. Defendant concedes that he and plaintiff expressly agreed to live together in his house and share expenses, beginning in 1980, but denies having made the promises she contends induced her to accept that arrangement.

In 1994 the parties had a falling out, following which plaintiff commenced this action seeking damages and equitable relief on various grounds, including breach of contract, unjust enrichment and fraud. Defendant's motion for summary judgment having been granted and the complaint dismissed, plaintiff appeals.

The first and fifth causes of action, sounding in breach of contract and intentional infliction of emotional distress, were properly dismissed. The former is barred by the Statute of Frauds because the alleged contract could not, by its terms, be fully performed before the end of plaintiff's lifetime (see, General Obligations Law § 5-701 [a] [1]; *Yedvarb v Yedvarb*, 237 AD2d 433, 434, *lv denied* 90 NY2d 804). And given defendant's denial of other, material aspects of the purported agreement (see, *Tallini v Business Air*, 148 AD2d 828, 829-830), and the fact that he specifically raised the Statute of Frauds defense in his answer (see, *Moloney v Awad*, 156 AD2d 870, 871), his admission that the parties agreed to live together and share expenses did not, as plaintiff urges, effect a waiver of this defense. Nor is it obviated by plaintiff's asserted "partial performance" of the agreement, by selling her home and moving into defendant's home, activities that cannot reasonably be viewed as " 'unequivocally referable' " to the contract (see, *id.*).

As for plaintiff's charge of intentional infliction of emotional distress, it suffices to note that the particular conduct she cites in support of this conclusory allegation (*see, Caballero v First Albany Corp.*, 237 AD2d 800, 802-803) was not atypical in a "matrimonial dispute" (*see, Weicker v Weicker*, 22 NY2d 8, 11; *compare, Murphy v Murphy*, 109 AD2d 965, 965-966), and in any event does not rise to the level of atrocity or outrageousness necessary to sustain a claim of this nature (*see, Howell v New York Post Co.*, 81 NY2d 115, 122). Moreover, there is no evidence that the actions complained of were undertaken by defendant with an intent to cause plaintiff extreme emotional distress, or in disregard of a "substantial probability" that they would cause such distress (*see, Caballero v First Albany Corp., supra*, at 803).

The remaining causes of action, insofar as they seek to impose a constructive trust, charge fraud and request an accounting, must, however, be reinstated. The record evidence could support a finding that the parties' relationship was, in many respects, analogous to that of a husband and wife, and that as a result plaintiff reasonably trusted defendant and relied on him to protect her interests. Not insignificant, in this regard, is plaintiff's averment that she acceded to defendant's self-serving demands in certain financial matters because she trusted him; it can also be inferred from her testimony that defendant controlled the parties' joint bank accounts. A reasonable factfinder could thus conclude that plaintiff and defendant had a confidential relationship (*see, Sharp v Kosmalski*, 40 NY2d 119, 121). Such a conclusion may be appropriate even where, as here, there is no great disparity in the parties' education or experience; the question posed is whether the parties' relationship was one of "trust and confidence" (*see, Sinclair v Purdy*, 235 NY 245, 253; *Janke v Janke*, 47 AD2d 445, 448-449, *affd* 39 NY2d 786; *Muller v Sobol*, 277 App Div 884, 885).

Furthermore, plaintiff avers that she made substantial contributions, in money and labor, to the upkeep and improvement of defendant's house and grounds (including, among other things, a renovation of the garage, a new furnace and substantial landscaping work), in reliance on his promises that she would have life use of that home and other financial benefits. This evidence, viewed in the light most favorable to plaintiff, might warrant a finding that the value of defendant's property was enhanced by plaintiff's contributions, which plainly exceeded mere day-to-day maintenance, and that he has been unjustly enriched as a result (*see, Paramount Film Distrib. Corp. v State of New York*, 30 NY2d 415, 421, *cert denied* 414

US 829; *McCall v Frampton*, 81 AD2d 607, 609). Thus, if a confidential relationship existed, this use by plaintiff of her money and effort to improve defendant's property could justify the imposition of a constructive trust (*see*, *Gottlieb v Gottlieb*, 166 AD2d 413, 414; *Lester v Zimmer*, 147 AD2d 340, 342).

The fraud cause of action is also viable. If it is demonstrated that the parties did not "stand on an equal footing" because of a confidential relationship, and that as a result plaintiff justifiably relied upon defendant's promise of future performance, "an action to recover for constructive fraud may lie, irrespective of any actual intent to defraud" (*Brown v Lockwood*, 76 AD2d 721, 733). As previously observed, plaintiff's testimony, viewed favorably, provides a basis for finding that the parties did have a confidential relationship, that defendant had taken advantage of plaintiff's confidence to assume control over the parties' financial dealings, and that plaintiff justifiably trusted him with respect to such concerns. Under those conditions, defendant would bear the burden of showing that no deception had been practiced (*see*, *Matter of Gordon v Bialystoker Ctr. & Bikur Cholim*, 45 NY2d 692, 699), which he has not done.

As for the remaining cause of action, wherein plaintiff alleges that the parties' agreement and subsequent dealings created a partnership, and seeks an accounting of any income or appreciation in the value of partnership assets (including the real property) during the time they cohabited, dismissal is likewise inappropriate at this juncture. Defendant's contention that this claim must fail, as a matter of law, because the services purportedly rendered by plaintiff, as and for her contribution to the partnership, did not generate "profits", is meritless (*see, e.g.*, *Morone v Morone*, 50 NY2d 481, 488, n 3). Moreover, an oral partnership agreement is not entirely unenforceable merely because it incorporates promises that cannot be fully performed within a year or a lifetime; rather, "the only effect of the [Statute of Frauds], where [such an] agreement has been wholly or partially executed, is to convert it into a partnership at will, wherein a partner may bring an action in equity to call his copartner to account" (*Green v Le Beau*, 281 App Div 836). Accordingly, this cause of action states a legally cognizable claim (*see*, *Morone v Morone*, *supra*, at 486; *Artache v Goldin*, 133 AD2d 596, 599-600; *Stephan v Shulman*, 130 AD2d 484, 485; *McCall v Frampton*, 81 AD2d 607, 608-609, *supra*), and should also be reinstated.

As a final matter, we note that our decision does not, as the dissent implies, permit plaintiff to obtain relief "reserve[d] to spouses" (namely, equitable distribution of the parties' assets,

maintenance, etc.), but merely allows her an opportunity to demonstrate her entitlement to several much more limited avenues of redress, the availability of which has not been held to depend upon marital status, even in much less morally lenient times (*see, e.g., Muller v Sobol*, 277 App Div 884, *supra*).

Mikoll, J. P., and Crew III, J., concur.

Mercure, J. (concurring in part and dissenting in part). We believe that Supreme Court was absolutely correct in its grant of summary judgment dismissing the complaint, and we respectfully dissent from so much of the majority's determination as would do otherwise.

Stripped of all bold conclusory claims and strained legal theories, the factual allegations of the amended complaint and the evidence adduced on defendant's motion for summary judgment tell nothing more than a story of a relationship gone bad and a cohabitant's effort to obtain the kind of postdissolution monetary distribution that traditional mores and established New York law reserves to spouses. A common-sense view of the facts shows merely that, in order to save money and undoubtedly to enjoy one another's companionship, the parties cohabited for a number of years; they shared household chores and the cost of maintaining defendant's home and, ultimately, ended their relationship.

From a purely monetary point of view, plaintiff appears to have benefitted greatly from the arrangement. Moving into defendant's home allowed her to first rent out and then sell her own home and certain of its furnishings and to retain the money she received as a result. During the same period, defendant's capital was tied up in his home, an illiquid and nonincome-producing asset. Defendant remained solely liable for payment of the principal and interest on his outstanding mortgage, and plaintiff acknowledges that she made no contribution toward the mortgage payments. In fact, the record discloses that plaintiff paid no rent at all beyond her 50% contribution to the actual day-to-day cost of maintaining and perhaps insignificantly improving the property. Finally, although plaintiff makes a claim of entitlement to approximately $27,000 in jointly owned certificates of deposit or bank accounts, it is undisputed that plaintiff made no contribution toward those investments, and that defendant always retained control of the accounts and all indicia of ownership thereof.

It is in this light that we address certain of the majority's conclusions. Turning first to plaintiff's cause of action to impress a constructive trust, we see no evidence of any confidential or fiduciary relationship or any transfer of trust

assets. Certainly, there was no unjust enrichment. As such, we conclude that there is an absence of competent evidence to support three of the four essential elements of the cause of action (*see, Sharp v Kosmalski*, 40 NY2d 119, 121; *Brazil v Brazil*, 235 AD2d 611, 614).

We are not at all persuaded that plaintiff's conclusory assertions concerning defendant's control of the parties' joint bank accounts and her submission to defendant's demands in money matters supports a finding of plaintiff's "dependence * * * upon the trust and honor of the defendant" (*Sharp v Kosmalski, supra*, at 122). Aside from the fact that the money "controlled" by defendant is shown to have been his own, the record is silent concerning any disparity in the parties' intelligence, education or experience or any other identifiable circumstances supportive of a finding of real dependence (*compare, id.*). Rather, plaintiff's claim of dependence can be seen as a thinly veiled suggestion that the parties stood on an unequal footing merely because plaintiff is a woman and defendant is a man. Obviously, such an inference would be legally impermissible, morally offensive and factually unwarranted.

As for the "transfer" element, it is undisputed that plaintiff retained all of her own funds and made little or no investment in the property she now claims to constitute the "trust" corpus. Obviously, day-to-day maintenance, including yard work and the replacement of worn household equipment such as a furnace or garage door, does not constitute an investment in realty. In addition, we believe that the majority's reliance upon *Gottlieb v Gottlieb* (166 AD2d 413) and *Lester v Zimmer* (147 AD2d 340) is inapt. Both of those cases involved the construction of a home on unimproved property. In fact, in *Lester v Zimmer (supra)* the plaintiff made a monetary contribution toward the actual purchase of the property, and in both cases the plaintiff contributed time, money and labor toward the construction of the structure on the property. No comparable investment was made here. The "unjust enrichment" element requires very little discussion. Obviously, the arrangement under which plaintiff was, in effect, granted a one-half leasehold in plaintiff's property at "cost" bestowed a substantial economic windfall upon her, one so valuable that she claims its termination to be actionable.

Most offensive and obviously spurious are the causes of action for constructive fraud and for a "partnership" accounting. Both are legal fictions which plaintiff has twisted and distorted far beyond their intended scope. Neither has any reasonable relationship to the facts presented here and their prosecution

strikes us as a patent subterfuge for plaintiff's impermissible aim of establishing the existence of a common-law marriage and obtaining equitable distribution upon the dissolution thereof.

Casey, J., concurs. Ordered that the order and judgment are modified, on the law, without costs, by reversing so much thereof as granted the motion dismissing the second, third and fourth causes of action; motion denied regarding said causes of action and, matter remitted to the Supreme Court for further consideration of those aspects of defendant's motion not previously addressed; and, as so modified, affirmed.